LIEBERMAN, LOVEMAN & COHN *v.* E. C. KNIGHT *et al.**

(*Nashville.* December Term, 1925.)

1. **EQUITY.** Decree pro confesso by court with jurisdiction of parties and subject-matter is conclusive of all matter of which it is legal result after adjournment of term.

Decree *pro confesso* by court having jurisdiction of parties and subject-matter became final on adjournment of term, and is conclusive of all matter of which it is legal result, if free from other invalidating infirmity. (*Post, pp.* 271-273.)

Cases cited and approved: Taylor v. Sledge, 110 Tenn., 263; Brewster v. Galloway, 72 Tenn., 566.

2. **COURTS.** Chancellor, in adjourning order, can appoint special term apart from previous regular term, thus dispensing with requirement of newspaper publication, and all business before special term may be transacted as at regular term (Shannon's Code, sections 5745, 5749).

Under Shannon's Code, sections 5745, 5749, chancellor, in adjourning order, can appoint special term apart from previous regular term, thereby dispensing with requirement of newspaper publication of appointment of term, and all business coming before special term may be transacted as at regular term. (*Post, p.* 273.)

Cases cited and approved: Hall v. State, 71 Tenn., 554; Hall v. Mount, 43 Tenn., 73.

Codes cited and construed: Secs. 5745, 5749(S.).

3. **EQUITY.** Judge sitting by interchange with chancellor, after chancellor's adjournment of another court, had jurisdiction to enter decree pro confesso (Shannon's Code, sections 5708, 5709, 5711).

Under Shannon's Code, sections 5708, 5709, 5711, judge sitting by interchange with chancellor of Pickett county chancery court at Byrdstown, after chancellor adjourned court at Cookeville, had ju-

Lieberman, Loveman & Cohn v. Knight.

risdiction to enter decree *pro confesso;* latter court not being in session on date of decree.   (*Post, pp.* 273, 274.)

Codes cited and construed: Secs. 5708, 5709, 5711.

4.  **EQUITY.** Bill may be taken for confessed on nonappearance after publication, and judgment entered with or without proof, according to whether averments are sufficiently definite, at special term following date on which subpœna was made returnable (Shannon's Code, sections 6179, 6180).

Under Shannon's Code, sections 6179, 6180, bill may be taken for confessed on nonappearance of nonresident defendant after publication at special term following date to which subpœna was made returnable, and judgment may be entered at same term without proof if averments of bill are sufficiently definite to establish claim, or, if not, on introduction of evidence.   (*Post, pp.* 274, 275.)

Cases cited and approved: Ross v. Meek, 93 Tenn., 666; Sewell v. Tuthill, 112 Tenn., 271; Johnson v. Tomlinson, 81 Tenn., 607.

Codes cited and construed: Secs. 6179, 6180 (S.).

5.  **EQUITY.** Deficiency of allegations required to support decree is not supplied by taking bill for confessed, and decree beyond fair scope of pleadings is void.

That bill is taken for confessed does not supply deficiency of statements and allegations required to support decree, and decree beyond fair scope of pleadings is void.   (*Post, pp.* 275-279.)

Cases cited and approved: Nashville v. Fisher, 1 Shan. Cas., 345; Lancaster Mills v. Merchants, etc., 89 Tenn., 1; Cowan v. Wells, 73 Tenn., 682; McKelvey v. Creevey, 72 Conn., 464; Wilson v. Maltby, 59 N. Y., 126; Cooper v. Davis, 15 Conn., 556; Harris v. Bannon, 78 Ky., 568; Clark v. Reyburn, 1 Kan., 281; Kircher v. Schalk, 39 N. J. Law, 335; Citizens' Bank v. Knapp, 22 La. Ann., 117; Buckout v. Swift, 27 Cal., 433; Tomlinson v. Thompson, 27 Kan., 70; Taylor v. McConnell, 53 Mich., 587; Knoll v. Railroad, 121 Pa., 467; Mathews v. Silsby Bros., 37 A. L. R., 1120; McMillan v. Richards, 9 Cal., 365.

6. **MORTGAGES. Rule that mortgagee takes legal title and right to possession is applied only when necessary to protect mortgagee's security.**

    While rule that mortgagee takes legal title and right to possession theoretically prevails in Tennessee, doctrine is applied only when necessary to protect mortgagee's security; debt being principal fact and mortgaged estate merely collateral. (*Post, pp.* 279, 280.)

    Cases cited and approved: Henshaw v. Wells, 28 Tenn., 581; Reeves v. John, 95 Tenn., 440; Bank v. Ewing, 80 Tenn., 601; Maney v. Killough, 15 Tenn., 444; Brier Hill Collieries v. Gernt, 131 Tenn., 542; Hickman v. Cantrell, 17 Tenn., 172; Ellis v. Reaves, 94 Tenn., 212; Whitmore v. Parks, 22 Tenn., 96.

    Case cited and distinguished: Reid v. Bank, 33 Tenn., 274.

7. **MORTGAGES.**

    Title passing to mortgagee, where mortgagor remains in possession, is potential right to protect estate from such impairment of security as would defeat payment of debt. (*Post, pp.* 280-282.)

    Cases cited and approved: Schalk v. Kingsley, 42 N. J. Law, 32; Van Pelt v. McGraw, 4 N. Y., 110; Hoskin v. Woodward, 45 Pa., 42.

8. **MORTGAGES. Mortgage trustee's bill for value of timber cut from mortgaged land by mortgagor in possession and others held insufficient, in absence of statement as to value of land and allegation that removal of timber rendered value insufficient to satisfy mortgage debt.**

    In absence of statement as to value of land in bill by mortgage trustee, for value of timber cut from mortgaged land by mortgagor in possession and others, or any suggestion therein that removal of timber so reduced value of property as to render it insufficient to satisfy mortgage debt, bill showed no loss, and hence stated no ground for recovery; trustee's interest being limited to purposes of trust. (*Post, p.* 282.

    Case cited and approved: Greenlaw v. Wickersham, 43 Tenn., 55.

---

*Headnotes 1. Equity, 21 C. J., Section 951 (Anno); 2. Courts, 15 C. J., Sections 245, 252, 254; 3. Courts, 15 C. J., Section 251; Judges,

Lieberman, Loveman & Cohn v. Knight.

33 C. J., Section 112; 4. Equity, 21 C. J., Sections 941 (Anno), 947 (Anno), 948; 5. Equity, 21 C. J., Section 949; Judgments, 33 C. J., Section 87; 6. Mortgages, 27 Cyc., pp. 959, 961 (Anno); 7. Mortgages, 27 Cyc., p. 1272; 8. Mortgages, 27 Cyc., pp. 1269, 1273.

## FROM PICKETT.

Appeal from the Chancery Court of Pickett County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. W. R. OFFICER, Chancellor.

C. J. CULLOM, JOHN H. McMILLAN, SMITH & SMITH and NATHAN COHN, for plaintiff.

E. D. WHITE, S. M. TURNER, E. C. KNIGHT and ROBERTS & ROBERTS, for defendants.

MR. JUSTICE COOK delivered the opinion of the Court.

The bill was filed to avoid a decree rendered by the chancery court of Pickett county. The action of the chancellor dismissing the bill was reversed by the court of appeals, and the cause comes for review upon *certiorari*.

The bill in the former cause was taken for confessed at a special term of the chancery court of Pickett county on June 16, 1921, and a decree entered upon the verdict of a jury after proof upon issues submitted. The court had jurisdiction of the parties and the subject-matter, and, if free from other invalidating infirmity, the decree

which became final upon adjournment of the term is conclusive of all matter of which it is the legal result. *Taylor* v. *Sledge*, 110 Tenn., 263, 75 S. W., 1074; *Brewster* v. *Galloway*, 4 Lea, 566.

The former litigation involved a claim of the trustee under the mortgage from S. N. Garrett for the value of timber cut from the mortgaged property. November 3, 1920, S. N. Garrett conveyed to E. C. Knight, trustee, one hundred acres of land to secure Tim Hill, J. W. Barnes, and I. B. Garrett, sureties on his note of $2,400 to Farmers' Bank. The bill charged that S. N. Garrett and Lieberman, Loveman & Cohn unlawfully severed from the mortgaged land timber of the value of about $1,500, and converted it to their use. The prayer of the bill was for the value of the timber. It was filed May 10, 1921. Subpoena to answer returnable to the first Monday in June was served on Garrett in Pickett county on May 10th, and the process to Davidson county, returnable to June rules, was served on May 13th on all the other defendants except Cohn. At the special term of the court which opened June 15, 1921, the decree assailed by this proceeding was rendered upon *pro confesso* at the special term sitting about fifteen days after return day of the process, and within about thirty days after the bill was filed. Neither Lieberman, Loveman & Cohn nor their attorney had actual knowledge that a special term of the court was called for June 15, 1921, and neither knew of the trial until after execution was issued. Thereupon this action was commenced to annul the decree upon the charge that the court was illegally called upon charges of fraud, and suppression of facts upon the hearing of the bill

taken for confessed, and because the bill stated no ground to justify a recovery from the defendants.

The regular term of the chancery court of Pickett county was fixed by statute for the second Monday of October and April each year. The adjourning order at the April term, 1921, recites:

"There being no further business for disposition at this term, and especially as counsel in various cases are not in attendance and have agreed upon continuance, the court is adjourned until Wednesday, June 15, 1921, at which time a special term is called for the dispatch of all business in the court generally, and to which term all cases not at this time continued by special order, are continued generally. This April 11, 1921.

                    "W. R. OFFICER, Chancellor."

By section 5745 of Shannon's Code the chancellor could, in the adjourning order, appoint a special term apart from the previous regular term, and all business coming before the special term could be legally transacted as at a regular term. Shannon's Code, section 5749; *Hall* v. *State,* 3 Lea, 554; *Hall* v. *Mount,* 3 Cold., 73. By appointment the special term in the adjoining order, the requirement of publication in a newspaper was dispensed with. Shannon's Code, section 5745; *Reams* v. *Kearns,* 5 Cold., 217.

A question is made as to the jurisdiction of the court at Byrdstown to pass the decree while the chancellor was holding court at Cookeville. On June 15th, the chancellor adjourned the Cookeville court to June 17th, and that court was not in session on June 16th. On that date the chancery court of Pickett county was open for business, with Judge Snodgrass presiding by interchange with the

chancellor, and it was on that date that the decree in controversy was entered. After adjourning the court at Cookeville on the 15th, the chancellor could open and hold the court in Pickett county on the 16th. Under the statute, Judge Snodgrass, sitting by interchange, could lawfully exercise all the powers of the chancellor. Shannon's Code, sections 5708, 5709, 5711.

Error is assigned to the action of the court of appeals holding the decree void upon the ground that the case did not stand for trial upon *pro confesso* at the term when the bill was taken for confessed, because the allegations of the bill were too indefinite to form the basis of a decree, and proof was required to establish the claim. In support of this conclusion, the court referred to *Ross* v. *Meek*, 93 Tenn., 666, 28 S. W., 20, and *Sewell* v. *Tuthill*, 112 Tenn., 271, 79 S. W., 376.

It is provided by statute that bills may be taken for confessed: (1) After service of process and upon failure to defend; (2) after publication and nonappearance of the defendant; (3) in cases of contempt upon failure to respond; (4) upon failure to plead over after dilatory plea or demurrer; (5) upon refusal to file a sufficient answer in obedience to a rule requiring it. Shannon's Code, section 6179.

Section 6180 provides that in the first and second instances referred to in section 6179 *pro confesso* may be taken and the case set for hearing at the return term, and under the other three subsections at the term after *pro confesso*.

The subpœna to answer having been made returnable to the first Monday in June, the bill could be taken for confessed at the special term following. Under the sec-

tions of the Code above referred to, judgments could be entered at the same term the bill was taken for confessed, and no proof would be necessary if the averments of the bill were sufficiently definite to establish the claim; if indefinite and inconclusive, and evidence was required to establish the claim, a decree could be entered upon the introduction of evidence. *Ross* v. *Meek,* 93 Tenn., 666, 28 S. W., 20; *Johnson* v. *Tomlinson,* 13 Lea, 607.

It is urged through the other assignments of error that the court of appeals erred in holding the decree *coram non judice* and void because the bill of the trustee did not show a cause of action, nor allege facts upon which to rest a valid decree. The court of appeals observed the rule that the mortgagee or trustee can maintain no action for the value of severed timber or fixtures taken from mortgaged land without affirmatively showing that the severance impaired the security to the prejudice of the mortgagor. This rule prevails in many of the states, and in others it must be shown in addition that the mortgagor is insolvent to authorize recovery for severed timber or fixtures.

If the bill was insufficient in its statements, the fact that it was taken for confessed did not supply the deficiency of statements and allegations that would be required to support a decree; and a decree beyond the fair scope of the pleadings would be void. Gibson's Suits in Chancery, section 206; *Nashville* v. *Fisher,* 1 Shan. Cas., 345; *Lancaster Mills* v. *Merchants, etc.,* 89 Tenn., 1, 14 S. W., 317, 24 Am. St. Rep., 586; *Cowan* v. *Wells,* 5 Lea, 682, 15 R. C. L., pp. 605, 854, 895

The bill alleges, in substance, that S. N. Garrett, mortgagor, and Lieberman, Loveman & Cohn unlawfully cut

and converted to their use standing timber of the value of $1,500, taken from the mortgaged property described in the bill and deed of trust made Exhibit A to the bill, that the deed of trust was executed to secure payment of a note of $2,400 from G. N. Garrett to Farmers' Bank on which Hill, Barnes, and I. B. Garrett were sureties, and for whose benefit the deed of trust was executed, and that the note secured by the deed was outstanding and unpaid. It was charged that the defendants were tres-passers upon the mortgaged land and unlawfully removed the timber for which they were liable to the trustee.

The decree recites, in substance, that G. N. Garrett, in connection with Lieberman, Loveman & Cohn, unlawfully and without authority cut from the land covered by deed of trust to Knight, trustee, timber of the value of $1,560, which was converted by Lieberman, Loveman & Cohn to their use, and that their act rendered them liable to complainant Knight, trustee, for the use and benefit of the beneficiaries of the deed of trust for the value of the timber to be applied upon the $2,400 note payable to Farmers' Bank. The decree gave a recovery of $1,560, and directed the clerk and master when collected to pay the amount of the recovery to the Farmers' Bank. The bill does not state or charge that the severance of the timber alleged to have been taken by Garrett and his codefendant impaired the security to the prejudice of the beneficiaries of the deed of trust, or that the land would not pay the debt after severance of the timber, or that S. N. Garrett was insolvent. It does not state that the note secured by the deed of trust was due, or that default had been made by the mortgagor.

Lieberman, Loveman & Cohn v. Knight.

The court of appeals held that, in order to justify a recovery and authorize a decree in behalf of the trustee for timber taken from the mortgaged land, it was necessary for the bill to contain allegations or statements that severance of the timber impaired the security to the prejudice of the beneficiaries of the mortgage; that, unless removal of the timber reduced the value of the land to an extent which substantially impaired the security of the mortgage, the trustee had no right of action against any one for the severed timber, and without such a showing in the bill the trustee could not follow the severed timber and recover its value from third parties.

The rule observed by the court of appeals is sustained by authorities from many states. *McKelvey* v. *Creevey,* 72 Conn., 464, 45 A., 4, 77 Am. St. Rep., 321; *Wilson* v. *Maltby,* 59 N. Y., 126; *Cooper* v. *Davis,* 15 Conn., 556; *Harris* v. *Bannon,* 78 Ky., 568; *Clark* v. *Reyburn,* 1 Kan. 281; *Kircher* v. *Schalk,* 39 N. J. Law, 335; *Citizens' Bank* v. *Knapp,* 22 La. Ann., 117; *Buckout* v. *Swift,* 27 Cal., 433, 87 Am. Dec., 90; *Tomlinson* v. *Thompson,* 27 Kan., 70; *Taylor* v. *McConnell,* 53 Mich., 587, 19 N. W., 196; *Knoll* v. *Railroad,* 121 Pa., 467, 15 A., 571, 1 L. R. A., 366.

Reference to the annotations under *Mathews* v. *Silsby Bros.,* 37 A. L. R., 1120, discloses the variant opinions expressed as to the right of the mortgagee to follow things severed from the mortgaged land or to recover their value. As stated by the court of appeals, the question is one of first impression in this State. The varying rules applied in the several jurisdictions are also indicated by the text in Ruling Case Law, p. 339, sections 113, 114, 115.

The rules observed in the several states, and which determine the right of the mortgagee to recover for in-

juries to mortgaged land or to recover from third persons the value of things severed, arise from different theories as to the character of the interest or estate that passes by the deed to the trustee or mortgagee, and the nature of the claim on which the action rests. Where the trustee or mortgagee is held to take the legal title as at common law, and as such trustee or mortgagee may exercise all the rights of owner, he is permitted to sue and recover as if owner for injuries to the freehold. Where such estate only passes by the mortgage deed as is necessary to afford security for the debt, his right is measured by the loss suffered from the impairment. The two conceptions as to the nature of the estate that passes by the mortgage deed are referred to as the legal and the equitable. The last arises from the application partly of equitable doctrines, and through the operation of statutes and decisions modifying the common-law rule so that neither the mortgagor nor the mortgagee can be said to be the full and complete owner of the estate. By this rule the mortgage creates only a lien on the land or a potentiality which the mortgagee may follow by proper procedure to hold and appropriate the estate to the payment of the mortgage debt upon default of the mortgagor. The debt is the principal, and the mortgage is collateral, being intended only to secure the debt. Where this rule prevails, the interest of the mortgagee is an equitable right or a personal asset which may be assigned, and which passes to the mortgagee's personal representative on his death. Where this rule most strongly prevails, the mortgagee is not in any event entitled to the possession of the mortgaged premises, and cannot maintain a legal action for their recovery either before or after breach of the con-

dition. *McMillan* v. *Richards,* 9 Cal., 365, 70 Am. Dec., 655.

In those states, as in Massachusetts, to which the foregoing rule has not been extended in whole or in part, the mortgagee acquires and holds the legal estate as at common law, while the right of the mortgagor is wholly equitable. The mortgage is said to convey the estate and not merely to create a lien on the land, and the mortgagee is entitled to immediate possession of the premises.

In most of the states the equitable theory prevails in practice, and mortgagors are as a rule left in possession of the mortgaged premises and treated as the owners until after the condition is broken, upon which the mortgagee may enter and foreclose.

In Tennessee the mortgagee is said to hold the legal title and may recover possession of the land at once by action at law; but by express stipulation or by tacit consent the mortgagor retains possession of the mortgaged premises and exercises all the rights of owner over the premises. *Henshaw* v. *Wells,* 9 Humph., 581; *Reeves* v. *John,* 95 Tenn., 440, 32 S. W., 312; *Bank* v. *Ewing,* 12 Lea, 601; *Maney* v. *Killough,* 7 Yerg., 444; 4 Kent Com., 2d Ed., p. 154; *Brier Hill Collieries* v. *Gernt,* 131 Tenn., 542, 175 S. W., 560.

While in theory the rule prevails in Tennessee that the mortgagee takes the legal title and is entitled to possession, in practice the doctrine is only applied when neces sary to protect the mortgagee's security afforded by the estate. In no sense can it be said that the common-law rule in its strictness prevails here. By common law, estates which were conveyed subject to defeasance upon payment of a given sum, on a particular date, were held

to be estates upon condition, and, if the condition was broken, the estate became absolute in the grantee, because it was the principal fact, and the debt merely collateral. This principle applied equally to mortgages and deed of trust, intended as security for a debt, and providing for sale upon default in payment by the mortgagor. This rigorous rule has been modified in Tennessee, so that the debt becomes the principal fact, and the estate mortgaged to secure the debt merely collateral. *Hickman* v. *Cantrell,* 9 Yerg., 172, 30 Am. Dec., 396.

In *Reid v. Bank,* 1 Sneed, 262, 274, it was said: "For the mortgagee is considered as a creditor, not owner; and the only interest he has in the land, consists in a lien or security for the payment of his debt. It is a mere chattel interest. The mortgagor may exercise the rights of owner, if he do not commit waste or otherwise impair the security."

In *Ellis* v. *Reaves,* 94 Tenn., 212, 28 S. W., 1090, it is said: "The ownership of mortgaged property or of property conveyed" by deed of trust "is divided. Neither the mortgagor nor the mortgagee, the maker nor the trustee, is the full and complete owner."

The court said this was true, although the legal title passed to the trustee upon execution of the deed. See, also, *Whitmore* v. *Parks,* 3 Humph., 96. This principle is observed in the statement of the general rule in 27 Cyc., 1272 (5).

The title that passes to the mortgagee where the mortgagor remains in possession is a potential right to protect the estate from impairment of the security to such extent as would defeat payment of the debt secured. In the exercise of this right the mortgagee can restrain waste by the mortgagor or a third person. He can sue

and recover damages for acts done to the estate which impair the security afforded by it, and can follow things severed from the estate and recover their value if the severance impaired the security. But, in order to justify his recovery in any event, it must appear that he has suffered in consequence of the injury to the estate covered by the mortgage.

As heretofore stated, the apparent conflict found in the decisions and text-books respecting the right of the trustee or mortgagee to recover results from the difference in the nature of the mortgagee's estate and the character of the mortgagee's claim. There is a distinction between the severance of fixtures and the right of the mortgagee to recover for the timber and crops taken from the land.

In both Massachusetts and New Jersey it is said the legal title passes by the mortgage to the mortgagee or trustee, but in Massachusetts it is held that the mortgagee may recover full damages for the severance of fixtures or timber from the mortgaged property, notwithstanding the security for his debt was ample, while in New Jersey it is held (*Schalk* v. *Kingsley,* 42 N. J. Law, 32) that the right of the mortgagee to recover depends upon whether or not the removal of the fixtures affected the security afforded by the mortgage; and so in New York, *Van Pelt* v. *McGraw,* 4 N. Y. 110. In Pennsylvania a distinction is recognized between the right of the mortgagor to recover for impairment of the estate for removal of fixtures and improvements, and the right to recover for timber, crops, or minerals taken from the land. The mortgagor in possession may sell lumber, firewood, coal, or ore from the land without violating the rights of the

mortgagee until stopped by his entry or restrained by injunction.    The right to sell these latter things often affords the only way by which the mortgagor can satisfy the mortgage debt, and their sale might not in the least impair the security afforded the mortgagee.    *Hoskin* v. *Woodward*, 45 Pa., 42.

Garrett remained in possession of the mortgaged premises, and was in possession when the timber was sold. The bill contains no statement as to the value of the land, and no suggestion that the removal of the timber reduced the value of the mortgaged property to such extent as would render it insufficient to satisfy the mortgage debt. These were facts essential to the right of recovery, for, without impairment of the estate so as to affect the rights of the mortgagee, he suffered no loss, and, without loss, there could be no recovery.    His interest was limited to the purposes of the trust.    *Greenlaw* v. *Wickersham*, 3 Cold., 55.

Court of appeals affirmed.